UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALL SYSTEMS MAINTENANCE, INC., ANTHONY CINCOTTA and EILEEN PENNY,<br><br>         Plaintiffs,<br><br> -against-<br><br>DOMENICA GIORDANO, JOSEPH CAPPELINO, JC DREAMWORKS CONSTRUCTION, INC., NAPOLITANO BROTHERS DESIGN & CONSTRUCTION, INC., JOHN and JANE DOE 1 through 10, and XYZ CORPORATION 1 through 10,<br><br>         Defendants. | **COMPLAINT**<br><br>Index No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, ALL SYSTEMS MAINTENANCE, INC., ANTHONY CINCOTTA and EILEEN PENNY, collectively, "Plaintiffs", allege against Defendants, DOMENICA GIORDANO, JOSEPH CAPPELINO, JC DREAMWORKS CONSTRUCTION INC., NAPOLITANO BROTHERS DESIGN & CONSTRUCTION, INC., JOHN and JANE DOE 1 through 10, and XYZ CORPORATION 1 through 10, collectively, "Defendants", upon information and belief, as follows:

## INTRODUCTION

1. Defendants have engaged in a racketeering scheme conducted through various enterprises, the purpose of which was to steal money from the Plaintiffs through a series of fraudulent checks and electronic transfers issued from bank accounts and assets belonging to the Plaintiffs.

1

2. Plaintiff All Systems Maintenance, Inc., ("ASM") is a plumbing business owned by Plaintiffs Anthony Cincotta and his wife, Eileen Penny. Defendant Domenica Giordano ("Giordano"), was employed by ASM and served as ASM's bookkeeper from August, 2003 until her termination on June 26, 2020. As part of her responsibilities, Giordano was entrusted with the obligation to issue checks from ASM's bank accounts to pay for various business expenses including, inter alia, payroll, operating expenses, and disbursements to vendors for services rendered. Giordano was authorized by the owners of ASM to make such checks by using a rubber stamp to affix the signature of plaintiff Eileen Penny on each check.

3. The scheme operated as follows: From on or about September, 2015 through May, 2020, Giordano issued a series of checks on behalf of ASM payable to herself in amounts to which she was not legitimately entitled, and which were not authorized by ASM or its owners. Giordano similarly issued checks payable to defendant Joseph Cappelino, a close personal friend, and to the Corporate Defendants, which are companies principally owned by Cappelino. In addition, beginning in or about 2018, and extending through May, 2020, Giordano made a series of unauthorized electronictransfers from ASM's bank accounts to pay for her personal expenses and/or debts. To conceal these unauthorized checks and electronic transfers, and make them appear legitimate on ASM's books and records, Giordano fraudulently characterized these payments on ASM's Quickbooks ledger as legitimate business expenses incurred in the ordinary course of business. The scheme resulted in excess of $1,100,000.00 being fraudulently paid to the Defendants over a five-year period from 2015 to 2020.

4. As set forth more fully below, each of the Defendants played a role, or otherwise conducted or participated in the conduct of the enterprise's affairs and/or fraudulent conduct perpetrated against the Plaintiffs.

5. Plaintiffs seek, among other things, compensatory damages in excess of $1,100,000.00, trebled in excess of $3,300,000.00, under 18 U.S.C. § 1961 *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as, punitive damages under various state law claims.

## THE PARTIES

### The Plaintiff Parties

6. That at all times hereinafter mentioned, plaintiff, Anthony Cincotta ("Cincotta"), is an individual residing in the State of New York, County of Suffolk.

7. That at all times hereinafter mentioned, plaintiff, Eileen Penny ("Penny"), is an individual residing in the State of New York, County of Suffolk.

8. That at all time hereinafter mentioned, plaintiff, All Systems Maintenance, Inc. ("ASM"), is a New York corporation having a principal address at 20 Inez Drive, Bayshore, New York 11706.

9. That at all times hereinafter mentioned, Cincotta and Penny are husband and wife, and together are the sole members and owners of ASM.

### The Defendant Parties

#### A. The Individual Defendants

10. The parties set forth below are collectively referred to herein as the "Individual Defendants".

11. Upon information and belief, that at all times hereinafter mentioned defendant, Domenica Giordano ("Giordano"), is an individual residing at 661 Argosy Street, Islip Terrace, New York 11752.

12. Upon information and belief, that at all times hereinafter mentioned defendant,

Joseph Cappelino ("Cappelino"), is an individual residing at 14 Elf Court, Bohemia, New York 11716.

13. Upon information and belief, Giordano and Cappellino have maintained a close, personal relationship from or about 2012 to date.

14. Upon information and belief, defendants, John and Jane Doe 1 through 10, are and were individuals, trustees, members, owners, shareholders and/or employees of the Defendants, and are being sued in their individual and official capacities.

### B. The Corporate Defendants

15. The parties set forth below are collectively referred to herein as the "Corporate Defendants".

16. Upon information and belief, defendant, JC Dreamworks Construction, Inc. ("Dreamworks, Inc."), is a New York corporation with a principal business address located at 14 Elf Court, Bohemia, New York 11716.

17. Upon information and belief, Napolitano Brothers Design & Construction, Inc. ("Napolitano, Inc."), is a New York corporation with a principal business address located at 169 Commack Road, Suite #144, Commack, New York 11725.

18. Upon information and belief, Cappelino is the sole owner, officer, director and/or managing member and exercises full control over both Dreamworks, Inc. and Napolitano, Inc.

19. Upon information and belief, Giordano has performed services as a bookkeeper for Cappelino and the Corporate Defendants from on or about 2017 to date.

20. Upon information and belief, defendants, XYZ Corporation 1 through 10, are and were companies, corporations and subsidiaries residing within the State of New York.

21. The Individual Defendants and Corporate Defendants are collectively referred to

herein as the "Defendants".

## JURISDICTION AND VENUE

22. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (actions arising under the laws of the United States) and 18 U.S.C. § 1964(a), (b), (c), and (d) (jurisdiction over civil RICO actions).

23. The Court also has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

24. Venue is proper in this District under 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because this is where defendants reside and transact their affairs and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

25. At all times hereinafter mentioned, ASM maintained a business banking account at Bank of America, 345 East Main Street, East Islip, New York 11730 (the "ASM checking account"). Plaintiffs Cincotta and Penny, and their sons James and Joseph Penny, were the only authorized signatories for the ASM checking account.

26. In or around August, 2003, defendant Giordano was hired as an employee of ASM, and thereafter continued to work for ASM full-time until her termination for cause on June 6, 2020.

27. Beginning in or around 2015, and through the date of her termination, Giordano served as ASM's principal bookkeeper, and was provided with access to all ASM accounts and bookkeeping records, including the ASM checking account and the corporation's Quickbooks accounting system.

28. Among her duties and responsibilities, Giordano was authorized to maintain

account receivables and account payables, and also handle the ASM payroll which required weekly payments to approximately 40 – 60 employees. Giordano was authorized by ASM to signchecks with a rubber stamp facsimile of the signature of plaintiff Penny.

## The Fraudulent Check Scheme

29. Beginning in or around September, 2015, Giordano began issuing checks from the ASM checking account to herself and to the Defendants, to which they were not legitimately entitled (the "fraudulent checks"). None of the fraudulent checks issued by Giordano were authorized or approved by the Plaintiffs nor were they issued to satisfy any legitimate business expense.

30. From on or about September, 2015 through May, 2020, Giordano issued approximately three hundred and thirteen (313) fraudulent checks payable to herself, together totaling approximately $265,785.55, which sum was debited from the ASM checking account. Giordano negotiated each of these fraudulent checks and converted the funds to her own use and benefit.

31. From on or about August, 2016 through May, 2020, Giordano issued approximately fifty-five (55) fraudulent checks payable to defendant Dreamworks, Inc., together totaling approximately $158,200.00, which sum was debited from the ASM checking account. Defendant Dreamworks, Inc., with the knowledge that such checks were fraudulently issued, negotiated each of these fraudulent checks and converted the funds to its own use and benefit.

32. From on or about May, 2018 through May, 2020, Giordano issued approximately forty-nine (49) fraudulent checks payable to defendant Napolitano, Inc., together totaling approximately $198,500.00, which sum was debited from the ASM checking account. Defendant Napolitano, Inc., with the knowledge that such checks were fraudulently issued, negotiated each

of these fraudulent checks and converted the funds to its own use and benefit.

33. From on or about December, 2018 through May, 2020, Giordano issued approximately fifty-one (51) fraudulent checks payable to defendant Capellino, together totaling approximately $171,400.00, which sum was debited from the ASM checking account. Defendant Capellino, with the knowledge that such checks were fraudulently issued, negotiated each of these fraudulent checks and converted the funds to his own use and benefit.

34. In an effort to conceal the issuance of the fraudulent checks, Giordano fraudulently characterized these payments as legitimate business expenses in ASM's Quickbooks accounting system.

35. As a result of the Defendants' fraudulent check scheme, the Defendants collectively misappropriated and converted the sum of approximately $793.697.05 from the Plaintiffs.

### The Fraudulent Electronic Transfer Scheme

36. In or around June, 2018, Giordano began making electronic transfers from the ASM checking account to pay for personal debts and expenses (the "fraudulent electronic transfers"). None of these electronic transfers made by Giordano were authorized or approved by the Plaintiffs, nor were they made to satisfy any legitimate business expense of ASM.

37. From on or about June, 2018 through May, 2020, Giordano made approximately two hundred and nineteen (219) separate fraudulent electronic transfers, totaling approximately $315,422.38, resulting in such funds being debited from the ASM checking account and converted by Giordano to her own use and benefit.

### Continuation of the Fraudulent Scheme

38. On numerous occasions, since July 26, 2020, the Plaintiffs have demanded the Defendants to return the funds they illegally converted to their own use and benefit.

39. On July 17, 2020, defendant Giordano signed a sworn statement which was

7

provided to the Plaintiffs, admitting to the fraudulent scheme and agreed to pay restitution to the Plaintiffs.

40. On July 22, 2020, defendant Capellino signed a sworn statement which was provided to the Plaintiffs, admitting that money taken from Plaintiffs by Giordano had been deposited into bank accounts belonging to himself and the Corporate Defendants, and agreed to pay restitution to the Plaintiffs.

41. From on or about July, 2020 through November, 2020, the Defendants have paid Plaintiffs the sum of $415,000 as partial restitution.

42. From November, 2020 through the present, the Defendants have refused to pay the balance of the funds stolen from the Plaintiffs as a result of the Defendants' fraudulent scheme.

43. Upon information and belief, the Defendants have no intention to return the monies still owed to the Plaintiffs.

44. The Defendants have continued their scheme to defraud the Plaintiffs by failing and refusing to return the balance of the funds stolen from the Plaintiffs.

## RICO ALLEGATIONS

45. Defendants are a group of RICO persons associated in fact for the common purpose of engaging in fraudulent conduct constituting a RICO enterprise defined in 18 U.S.C. § 1961(4), functioning together as a continuing unit, each of them necessary to accomplish each step or aspect of the fraudulent scheme. The purpose of the association-in-fact was to fraudulently convert to their own use and benefit money belonging to the plaintiffs.

46. **Pattern of Racketeering:** The pattern of racketeering activity included related violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud).

47. **Conduct and Participation:** Defendants, all of whom are persons within the meaning of RICO, managed and participated in the conduct of the Enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c), including multiple acts of wire fraud and bank fraud.

48. **Continuity Plus Relatedness (Pattern) of Conduct:** The pattern began no later than 2015 and is continuing through present time.

49. **Injury to Property:** Plaintiffs were directly and proximately harmed by predicate acts of racketeering, including wire fraud, bank fraud and other violations, which resulted in ascertainable financial losses to the Plaintiffs.

## PREDICATE ACTS OF RACKETEERING

50. The fraudulent scheme was effected by a pattern of related acts of wire fraud and bank fraud (collectively, the "Predicate Acts"), which were agreed upon and coordinated among the Defendants as part of the conspiracy among Defendants to effect the fraudulent scheme.

51. Each of the Defendants knowingly participated in the formation of the fraudulent scheme with one or more Defendants and willingly participated by knowingly and intelligently carrying out the Predicate Acts detailed herein.

52. Based on the nature of the fraudulent scheme, some of the details of the Defendants' wrongdoing are exclusively within the possession of the Defendants, preventing Plaintiffs from pleading certain acts with greater particularity.

53. **Wire Fraud, 18 U.S.C. § 1343:** The Wire Fraud Statute, 18 U.S.C. § 1343, prohibits: "transmit[ting] . . . by means of wire . . . any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice [to defraud]."

54. Each of the below acts was done in furtherance of the scheme to receive money from Plaintiffs and used, or caused the use of, the United States wires:

   a. Electronic transfers of funds made in furtherance of the fraudulent scheme, including: From on or about June, 2018 through May, 2020, Giordano made approximately two hundred and nineteen (219) separate fraudulent electronic transfers totaling approximately $315,422.38, resulting in such funds being debited from the ASM checking account and converted by Giordano for her own use and benefit.

55. **Bank Fraud, 18 U.S.C. § 1344:** The Bank Fraud Statute, 18 U.S.C. § 1344, prohibits a person from "obtain[ing] any of the moneys, funds, credits, assets, securities or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises."

56. From on or about September 2015 through May, 2020, defendant Giordano, without authorization, issued checks and made electronic withdrawals from the ASM checking account, totaling approximately $1,100,000.00 in funds, under false and fraudulent pretenses, including:

   a. Issuing approximately four hundred and sixty-eight (468) checks drawn on the ASM checking account payable to the Defendants, totaling $793.697.05, which funds were then converted by the Defendants for their own use and benefit.

   b. Making approximately two hundred and nineteen (219) fraudulent electronic transfers of funds from the ASM checking account to pay for personal debts and expenses, resulting in the sum of $315,422.38 being converted by defendant Giordano for her own use and benefit.

## CLAIMS FOR RELIEF

### VIOLATIONS OF THE RICO ACT

**COUNT I**
**RICO – 18 U.S.C. § 1962(a)**
**Using And Investing Income Derived From Racketeering**
**(Plaintiffs Against All Defendants)**

57. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

58. Defendants received income derived, directly or indirectly, from a pattern of racketeering activity affecting interstate and foreign commerce.

59. Defendants derived this income by defrauding Plaintiffs, which was achieved by a pattern of racketeering activity, including violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud).

60. Plaintiffs were directly and proximately harmed by the financial losses caused by the pattern of racketeering activity, including the predicate acts described above, committed by the Defendants.

61. Plaintiffs are entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(a).

**COUNT II**
**RICO – 18 U.S.C. § 1962(b)**
**Acquisition of an "Interest in or Control of" an Enterprise**
**(Plaintiffs Against All Defendants)**

62. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

63. Defendants, through a pattern of racketeering activity, acquired and maintained, directly or indirectly, an interest and control of the in-fact enterprise. These entities were engaged

in activities that affect interstate and foreign commerce.

64. Defendants, through a pattern of racketeering activity, acquired, directly or indirectly, control over and interest in the association-in-fact enterprise.

65. By gaining control over the enterprise, Defendants were able to convert to their own use and benefit money belonging to the Plaintiffs.

66. The pattern of racketeering activity that enabled the Defendants to convert to their own use and benefit money belonging to the Plaintiffs included violations of 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud).

67. Plaintiffs were directly and proximately harmed by the financial losses caused by the Defendants taking over the control of the enterprise.

68. Plaintiffs are entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(b).

## COUNT III
## RICO – 18 U.S.C. § 1962(c)
**Employment Or Association With An Enterprise Engaged In Racketeering**
**(Plaintiffs Against All Defendants)**

69. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

70. Defendants were employed by and associated with the Enterprise, which engaged in activities that affect interstate and foreign commerce.

71. They conducted and participated in, directly or indirectly, the conduct of the Enterprise, through a pattern of racketeering activity, including facilitating the predicate acts described above.

72. The pattern of racketeering activity includes two or more related predicate acts, described above, committed within a six-year period in regard to the fraudulent scheme.

73. Plaintiffs were directly and proximately harmed by the financial losses caused by the pattern of racketeering activity, including the predicate acts described above.

74. Plaintiffs are entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(c).

## COUNT IV
## RICO – 18 U.S.C. § 1962(d)
## Conspiracy To Commit RICO Violations
## (Plaintiffs Against All Defendants)

75. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

76. Defendants conspired to commit violations of 18 U.S.C. § 1962 (a), (b), and (c) described above; and agreed to commit two or more related predicate acts of racketeering in an seven-year period in the course of operating the enterprise including the numerous predicate acts set forth above.

77. Plaintiffs were directly and proximately harmed by the financial losses caused by the pattern of racketeering activity, including the predicate acts described above.

78. Plaintiffs are entitled to treble damages, attorney's fees and any other relief applicable under 18 U.S.C. § 1962(d).

## VIOLATIONS OF NEW YORK STATE LAW

## COUNT V
## Fraud
## (Plaintiffs Against All Defendants)

79. The allegations of the above paragraphs are incorporated herein as if set out in full.

80. Defendants stole money belonging to the Plaintiffs and fraudulently converted the same to their own use and benefit.

81. Defendants' conversion of funds was made with the purpose of defrauding the Plaintiffs of their money.

82. As a result of the forgoing, the Plaintiffs have suffered and will continue to suffer damages.

## COUNT VI
## Unjust Enrichment
## (Plaintiffs Against All Defendants)

83. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

84. Defendants have been enriched at the expense of the Plaintiffs and it would be grossly unfair and unjust to allow the Defendants to retain the funds they fraudulently converted from the Plaintiffs.

85. As a result of the forgoing the Plaintiffs have suffered and will continue to suffer damages.

## COUNT VII
## Civil Conspiracy to Commit Tort
## (Plaintiffs Against All Defendants)

86. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

87. Defendants made concerted actions acting for a common goal to defraud the Plaintiffs.

88. Each and every member of the conspiracy is equally and vicariously liable for damages caused to the Plaintiffs by the Defendants' misrepresentations and actions.

89. The conduct of the Defendants was willful, wanton, intentional, malicious and reckless.

90. As a result of the forgoing, the Plaintiffs have suffered and will continue to suffer damages.

91. Plaintiffs are entitled to punitive damages.

## COUNT VIII
## Conversion
## (Plaintiffs Against All Defendants)

92. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

93. Plaintiffs have clear, legal ownership and rights to possession of the monies that the Defendants fraudulently converted from the Plaintiffs.

94. As a direct and proximate result of the Defendants' acts of conversion, the Plaintiffs have suffered and will continue to suffer damages.

## COUNT IX
## Deceptive Acts and Practices
## (Plaintiffs Against The Corporate Defendants)

95. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

96. New York General Business Law § 349 provides that "[d]eceptive acts or practices in the conduct of any business […] in this state are hereby declared unlawful."

97. The Corporate Defendants have violated New York General Business Law § 349 by engaging in deceptive acts or practices in connection with conducting their business.

98. As a result of the forgoing, the Plaintiffs have suffered and will continue to suffer damages.

99. Plaintiffs are entitled to their actual damages, attorney's fees and any other relief applicable under New York General Business Law § 349.

## COUNT X
## Breach of Fiduciary Duty
### (Plaintiffs Against Defendant Giordano)

100.   The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

101.   Defendant Giordano owed fiduciary duties to Plaintiffs, including a duty of good faith and fair dealing.

102.   As detailed above, Defendant breached her fiduciary duties by conceiving and implementing a scheme to fraudulently convert for her own use and benefit, and the benefit of Defendants, money belonging to Plaintiffs.

103.   These acts were taken in bad faith and contrary to the best interest of Plaintiffs.

104.   Plaintiffs have sustained damages as a direct result of Defendant Giordano's breach of her fiduciary duty.

105.   Plaintiffs are entitled to disgorgement of any ill-gotten gains, all compensation paid to Defendant Giordano during the period of her disloyalty, and damages resulting from the loss of income caused by Defendant Giordano's wrongful actions.

## COUNT XI
## Piercing the Corporate Veil
### (Plaintiffs Against All Corporate Defendants)

106.   The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

107.   Defendant Capellino is the owner of the Corporate Defendants.

108.   Defendant Capellino, as owner of the Corporate Defendants, exercises complete dominion and control over the Corporate Defendants.

109.   The relationship between Defendant Capellino and the Corporate Defendants is

such that the Defendant Capelllino uses the Corporate Defendants as his alter ego for his own purposes.

110. The control by Defendant Capellino over the aforementioned Corporate Defendants is so complete and extensive that he made all the decisions, including the decision to engage in the scheme to defraud the Plaintiffs.

111. As a direct and proximate cause of Defendant Capellino's control over the aforementioned Corporate Defendants, Plaintiffs suffered damages.

## COUNT XII
### Imposition Of Constructive Trust And Injunctive Relief
### (Plaintiffs Against Defendant Giordano)

112. The allegations of the foregoing paragraphs are incorporated herein as if set out in full.

113. Defendant Giordano owed fiduciary duties to Plaintiffs, including a duty of good faith and fair dealing.

114. As detailed above, Defendant Giordano breached her fiduciary duties by conceiving and implementing a scheme to fraudulently convert moneys belonging to the Plaintiffs.

115. These acts were taken in bad faith and contrary to the best interest of Plaintiffs.

116. As a result, Plaintiffs are entitled to writs of attachment and imposition of a constructive trust on all monies transferred to the Defendant Giordano's accounts.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment against Defendants as follows:

a. Finding that Defendants' conduct violates RICO 18 U.S.C. § 1962 and that Plaintiffs were injured by their conduct;

b. Finding that Defendants' conduct constitutes common law fraud, unjust enrichment, conspiracy to commit tort, conversion, deceptive acts and practices, and breach of fiduciary duties; that Defendants were unjustly enriched and should disgorge profits; and that the Defendants' conduct justifies piercing the corporate veil for the Corporate Defendants;

c. Awarding equitable relief requiring Defendants disgorge and pay back all sums they have collected from Plaintiffs and further, that Defendant Giordano return all compensation paid to her during her period of disloyalty;

d. Ordering Defendants to provide an accounting of all profits incurred from the use of Plaintiffs' monies, including fees and interest;

e. Awarding actual, nominal, punitive, compensatory, and consequential damages in an amount to be proved at trial;

f. Ordering attachment and imposition of a constructive trust upon the property, assets, and monies of the Defendants;

g. Ordering trebling of damages and attorney fees under RICO;

h. Awarding pre-judgment and post-judgment interest; and

i. Awarding such other relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs request a jury trial on all issues triable.

Dated: November 18, 2021
      Hauppauge, New York

                                        Respectfully submitted,

                                        /s Christopher Gerace, Esq.
                                        *Christopher Gerace, Esq.*
                                        Bar Number: CG5593
                                        Russo Karl Widmaier & Cordano, PLLC
                                        400 Town Line Road, Suite 170
                                        Hauppauge, New York 11788
                                        Phone: (631) 265-7200
                                        Fax: (631) 265-7578
                                        cg@rkwclaw.com